# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# Chattanooga Division

| | |
|---|---|
| **ULG COMPANIES, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: _____ |
| | ) |
| **SOUTHERN SPEAR IRONWORKS, LLC,** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES the Plaintiff, ULG Companies, LLC ("Plaintiff" or "ULG"), a Delaware limited liability company, by counsel, and pursuant to the Federal Rules of Civil Procedure, states as its Complaint against the Defendant, Southern Spear Ironworks, LLC ("Southern Spear"), a Tennessee limited liability company, as follows:

## Nature of Action

This is an action by a staffing company against a customer arising out of unpaid invoices. The unpaid invoices date back to July 2, 2021. ULG seeks, in this action, to recover the unpaid principal balance of $370,254.82 plus contractual interest and collection costs, including attorneys' fees.

## Parties

1. ULG is a limited liability company organized in Delaware. Its sole member is NSC Technologies, LLC ("Tech"), whose sole member is NSC Holdings, LLC ("Holdings"). The members of Holdings are natural persons, who are citizens of the following states: Arizona, Florida, Kentucky, Massachusetts, Michigan, North Carolina, New Jersey, Pennsylvania, Texas, and Washington. Holdings is thus a citizen of each of those states. Likewise, because Holdings

is the sole member of Tech, Tech is a citizen of the same states, and because Tech is the sole member of ULG, ULG is also a citizen of the same states. ULG is in the staffing business.

2. Southern Spear is a limited liability company organized in Tennessee. Upon information and belief, its members are citizens of Tennessee, and it is therefore a citizen of Tennessee. Southern Spear is in the construction business.

## Jurisdiction and Venue

3. This Court has general personal jurisdiction over the Defendant because the Defendant is organized in Tennessee, has its principal place of business in Tennessee, and because all of its members are citizens of Tennessee.

4. In the alternative, this Court has specific personal jurisdiction over the Defendant because much of the conduct giving rise to this action occurred in Tennessee. This conduct included the Defendant's execution of the contract at issue here, its receipt of the unpaid invoices, and its failure to issue payments, as well as the Plaintiff's provision of staffing services.

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this cause of action arose in this district.

## Factual Background

7. In March 2021, the parties entered a Client Service Agreement (the "Contract"), pursuant to which ULG would provide staffing to Southern Spear. A true copy of the Contract is attached here as **Exhibit A**.

8. Pursuant to the Contract, ULG provided employees to Southern Spear for work at Southern Spear's Chattanooga facility and at several job sites.

9. ULG submitted regular invoices to Southern Spear. Initially, Southern Spear paid ULG's invoices on time.

10. Beginning in July 2021, Southern Spear began to fall behind on paying ULG's invoices.

11. By November, 2021, the principal balance on the unpaid invoices totaled $370,254.82. A true statement of account (the "Account Statement") is attached hereto as **Exhibit B**. True copies of each of the unpaid invoices are attached hereto, collectively, as **Exhibit C**.

12. The unpaid invoices are dated June 27, 2021 through October 24, 2021.

13. ULG attempted to arrange a payment plan with Southern Spear:

   a. On September 14, 2021, ULG proposed a payment plan under which Southern Spear would pay off the then unpaid balance via weekly installments of $60,000 each.

   b. On September 16, 2021, Southern Spear replied, stating that it "will plan to send $60,000 via ACH tomorrow with the confirmation as well."

   c. ULG replied the same day seeking clarification that Southern Spear would not only be making the initial payment of $60,000 but that it was also agreeing to "a weekly payment for that amount."

   d. Southern Spear replied, "I think that's a good plan for our going forward strategy."

   e. Then, on September 20, 2021, Southern Spear sent ULG an email documenting an ACH payment of $60,000.

  f. At no point during the negotiation of this repayment plan did Southern Spear dispute any of the amounts due.

  g. A true copy of the email correspondence referred to in this Paragraph is attached hereto as **Exhibit D**.

 14. In reliance on Southern Spear's agreement to a repayment plan and Southern Spear's payment of the first installment under that plan, ULG continued to provide employees to Southern Spear under the Contract.

 15. In breach of both the Contract and its promise to resolve it overdue balance under the payment plan described above, Southern Spear once again ceased making payments to ULG.

 16. Upon discovering this, on October 11, 2021, ULG sent another email to Southern Spear stating, "We're getting concerned over here again, as the email below signifies the last payment I've seen from you. By my calculations, you've missed the agreed upon $60k payment of the last two weeks in a row." Ex. D. ULG went on to inquire when Southern Spear intended to get caught up and stated that absent a response, ULG would have to remove its employees from the Southern Spear job sites. Id.

 17. Southern Spear replied the same day and, for the first time, made allegations of malfeasance and/or misfeasance by ULG employees in connection with work for Southern Spear. Ex. D.

 18. ULG suspected these allegations were pretextual and that Southern Spear was merely attempting to stall for time. This suspicion was grounded in the following facts:

  a. First, Southern Spear never raised these issues prior to October 11, 2021 and never disputed any amounts due. Indeed, just one month earlier, in response to ULG's demand that Southern Spear satisfy its unpaid balance, Southern Spear

made no mention whatsoever of any mal or misfeasance by ULG employees and raised no dispute whatsoever as to the open balance. Further, ULG agreed to pay it off on a payment plan and made the first payment on September 20, again with no dispute regarding the amount of the open balance.

    b. Further, the Contract is explicit that Southern Spear was responsible for management and supervision of all ULG employees at its jobsites. For example, in Paragraph 4(c) the Contract states, "Client is solely responsible for directing, supervising, and/or controlling [ULG] Employees' work." Paragraph 4(d) states that ULG "does not warrant or insure the work performed by any [ULG] Employee."

19. Notwithstanding its suspicion that Southern Spear's misconduct allegations were pretextual, ULG responded promptly and offered to discuss the matter over the phone. On the subsequent call, ULG requested details about the alleged misconduct and stressed the need for Southern Spear to get current on the unpaid invoices. Southern Spear never provided additional detail and made no further efforts to pay the unpaid balance.

20. When ULG's subsequent efforts to collect the unpaid balance proved unavailing, ULG caused its outside counsel to send Southern Spear a demand letter on November 12, 2021. A true copy of this letter is attached hereto as **Exhibit E**.

21. Notwithstanding ULG's repeated demands, Southern Spear has persisted in its refusal to satisfy the unpaid balance due to ULG.

## Count I – Breach of Contract

22. The Plaintiff hereby adopts and incorporates the allegations contained in all preceding paragraphs of this Complaint as if fully set forth again.

23. The Contract is a valid contract between ULG and Southern Spear.

24. Under the Contract, ULG agreed to provide workers to Southern Spear, and Southern Spear agreed to pay ULG for those workers at each worker's hourly rate. Specifically, the Contract provides: "Client shall pay [ULG] the agreed billing rate for each [ULG] Employee assigned, multiplied by the hours worked for Client by that [ULG] Employee. [ULG] will invoice Client weekly. Payment of invoices shall be on 'net 15' terms." Contract ¶ 5.

25. In the event of nonpayment by Southern Spear, the Contract further provides for ULG to recover its collection costs, for ULG to assert available lien rights, and for unpaid balances to bear interest at the monthly rate of 1% during days 16-30 after the invoice is issued and at a monthly rate of 2% thereafter.

26. Pursuant to the Contract, for a period of several months, ULG provided Southern Spear employees, and Southern Spear paid ULG's invoices without objection.

27. Beginning in approximately July 2021, Southern Spear began breaching the Contract by failing to pay for the employees ULG provided.

28. As set out in Exhibits A and B hereto, the unpaid principal balance Southern Spear now owes ULG is $370,254.82.

29. In addition to this principal balance, Southern Spear is obligated to pay ULG interest and its cost of collecting the unpaid balance.

30. To date, Southern Spear has refused to pay the amounts owed under the Contract. Southern Spear is therefore in breach.

31. As a direct and proximate result of this breach, ULG has been damaged in the amount of the unpaid principal balance of $370,254.82, plus contractual interest and collection costs incurred in this action, including attorneys' fees.

WHEREFORE, ULG Companies, LLC moves this Court to enter judgment in its favor against the Defendant: (a) awarding $370,254.82 in compensatory damages; (b) awarding prejudgment and post-judgment interest at the contractual rates; (c) awarding Plaintiff its costs of this litigation including its reasonable attorneys' fees; and (d) granting such further relief as the Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT
### Pled in the Alternative

32. The Plaintiff hereby adopts and incorporates the allegations contained in all preceding paragraphs of this Complaint as if fully set forth again.

33. If ULG is not able to recover the unpaid balance due to it via its breach of contract claim, then it will have no adequate remedy at law.

34. Southern Spear was unjustly enriched at the expense of ULG when it knowingly accepted and retained services performed by ULG employees, despite not paying ULG, in full, for those services rendered.

35. ULG conferred a benefit valued at $370,254.82 on Southern Spear, based on Southern Spears' representation that it would pay for invoiced services rendered by ULG. ULG expected performance by Southern Spear in exchange for the benefit ULG conferred.

36. Southern Spear knowingly received the benefit of the work performed by ULG employees but has not paid ULG, in full, for the benefit it received.

37. Southern Spear knew or should have known that ULG did not intend to confer the foregoing benefit upon Southern Spear without ULG receiving payment, in full, for those services.

38. Allowing Southern Spear to retain the full benefit of the services ULG provided, without paying ULG in full for the cost of providing those services, would be inequitable.

7

39. This Honorable Court should exercise its equitable powers to remedy Southern Spear's wrongful retention of the benefit ULG conferred upon Southern Spear by ordering Southern Spear to pay for those services, in the agreed amount of $370,254.82, plus interest.

WHEREFORE, ULG Companies, LLC moves this Court to enter judgment in its favor against the Defendant: (a) awarding $370,254.82 in quantum meruit compensatory damages; (b) awarding prejudgment and post-judgment interest at a rate the Court deems equitable; and (c) granting such further relief as the Court deems just and proper.

Dated: January 28, 2022

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: */s/K. Chris Collins*
K. Chris Collins, TN BPR No. 029109
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
Phone: 423.266.5500
Fax: 423.266.5499
E-mail: chris.collins@huschblackwell.com